23-624. And we have Mr. Nolan for the appellant, who would like to reserve one minute for rebuttal. Please. Good morning, Your Honors. May it please the Court, Dennis Nolan, Anderson Kill, on behalf of the appellant, Pine Management, Inc. This is an insurance coverage case, Your Honors, and it's important that we view this case through the proper lens. First, this case involves Colony Insurance Company's disavowal of its duty to defend its policyholder. That duty is exceedingly broad, and an insurance company must defend its policyholder if the claim even potentially falls within coverage, or if there's even the remotest possibility of coverage. And second, we're here in the context of a motion for judgment on the pleadings. You must take as true the allegations in the pleadings, the documents that are attached to the pleadings, and any inferences that you may make. But most importantly, any inferences and implications that can be drawn from those must be construed in favor of the non-movement's favor. And can I just clarify, the home-denied letter was attached, and you would agree that we should properly consider it, right? That's correct, Your Honor. It's not just the Holland and Knight letter, though. It's also the other letters that followed over the course of the next five months. Sure. So what are the inferences that we should make that prevent us from understanding the Holland and Knight letter as amounting to a claim? The letter – sorry, that's better. The letter does use the word claim several times. It sets forth theories of liability, and it says that its claims are going to survive a motion to dismiss. It says we would like to have an amicable resolution, but if not, we're going to – it seems pretty clear that they intend to sue. So what are the inferences you would make to say that that doesn't amount to a claim? Well, first of all, Your Honor, the law is clear that when you're talking about principles of insurance coverage, you have to apply the actual literal definition in the policies. You can't apply colloquial claims. There must be, in this case, a written demand for monetary, non-monetary, or injunctive relief, and that simply wasn't here. The first page of the letter starts out and says this arguably shows. But what's also clear is what this Court said in the Wyndham case is that there are certain things that are not a claim. So, for example, a threat of litigation is not a claim. Accusations of wrongdoing are not a claim. A request for information is not a claim. You actually have to have a written demand for monetary, non-monetary, or injunctive relief, and that isn't the case here. In fact, with respect to monetary relief, Colony admitted in their brief – So then they do say that we think that there's this wrongdoing, this breach of fiduciary duty and so on, and we want you to rectify it by behaving differently. But because they're not asking for an injunction requiring them to behave differently, it's not a claim? Actually, Your Honor, in the H&K letter, they did not say we want you to act differently. What they laid out – If they had said we want you to act differently, would that amount to a claim? If they had said we'd like you to rectify this situation – So you think the letter was just saying you're doing something bad. We have no particular concern about it. We don't really want you to do anything differently. That's why it's not a claim? I think what the letter is actually saying is we'd actually like information. What they're asking for is documents. They're saying under the LLC law and under the operating agreements, we're allowed to request documents. So that's what they're doing here. I agree that that is a demand. They're demanding documents under the operating agreements and the LLC law. But what they're doing is they're going to then evaluate those documents, and they're going to then – I don't know if that's true. Why isn't the request for documents a request for some kind of relief? So that's a good question, Your Honor, and there are two reasons. Here under the LLC law, and this is stated in the H&K letter at page 4, it says that under the LLC law, an inspection is at the member's own expense, not at the policyholder's expense. So the insurance company can't actually defend or pay that. There's nothing to pay. There's simply no loss under the policy. So a request for documents like that can't be a claim. So you're saying a claim has to involve a request for injunctive or monetary relief, but also something that might end up being covered by the insurer? So you're saying that the request for documents is a claim, but it's not one that's insurable, and so therefore it's not a claim under the policy? I actually don't believe the request for documents alone is a claim, and the reason being that it's not a claim is because it may be a precursor to a claim. All they're saying is we have a right under the law, the LLC law and the operating agreement, to ask for documents. If something is a precursor to the claim, isn't it notice of an alleged claim or an alleged wrongful act? If you're acknowledging that the letter is a precursor to a claim, doesn't that mean that your client has noticed that there's a claim hanging out there that might materialize? No, Your Honor. That's actually something that there's a potential claim, and the policy defines a potential claim specifically, and it defines a potential claim as a reason. Actually, let me just pull that out, Your Honor, and I can direct you exactly to where that is. This is paragraph H of the policy, of the definitions of policy, A31. A potential claim means any wrongful act, any alleged act, which might reasonably expect it to give rise to a claim, or any breach of a duty to a client, which has not resulted in a claim. Under that circumstance, it's not a claim. It's a potential claim, and the policyholder may give notice to the insurance company at that point, but that wasn't the case here because Colony Insurance wasn't even on the risk at the time. So that request, this precursor, is only a potential claim. It's not a claim. But I'm just looking. Claim is defined at 28, right? Page 28? That's correct, Your Honor. And that's a written demand, and this is written, the Holland and Knight letter, right? Mm-hmm. And it's a demand. It's received by an insured, right? It's received by a client, and you're arguing that it's not for monetary, non-monetary, or injunctive relief. That's correct, Your Honor. And you're saying it's not any of those things? That's correct. In fact, it includes, it doesn't argue for non-monetary relief? It does not argue for non-monetary relief because, again, what they're asking for are documents that, under the operating agreement and the LLC, where they have to pay for themselves. They're not, if we went to Colony and said, hey, we got this. Just take a step back. I mean, wouldn't somebody reading the H&K letter understand it to be accusing your client of wrongdoing and that reader would think that a lawsuit was a real possibility based on that controversy? So there are two issues at play there, Your Honor. One of those is, is there an accusation of wrongdoing? And I think they do say, you guys may have done something wrong here. But an accusation of wrongdoing alone, according to the Wyndham case, is not a claim. The other issue is, that goes to the second error here, Your Honor, which is the prior knowledge exclusion. And this notion of, did you believe that a claim could result from that? That's actually not the language of the policy here. It's completely different. And, again, this notion of the reasonable belief that a claim might result from that, that's under a completely different portion of the prior knowledge exclusion that Colony has not asserted here. And, actually, they can assert it here. Because, again, that language of a reasonable expectation that a claim may result is in Exclusion A-1. They're arguing it's a claim, though. And you're saying it's not. I don't think they're arguing it's not a potential claim, right? I think they're arguing it's a claim. They're arguing that's a claim, but I'm also – That's the battleground here, right? Yes, Your Honor. You win if it's not a claim. They win if it's a claim, right? That's correct, Your Honor. It could also be a wrongful act, right? Or you would acknowledge it's a wrongful act. Their allegations are wrongful acts. But just going back to your point, Your Honor, there are three things that are – three arguments at issue here. One is, is it a claim? And you're right. If it's not a claim, we win. But the other issue is, is there – does this prior knowledge exclusion apply? Ah, right. So that's the issue that I'm focusing – I guess on that one issue. Yeah. So that's what I'm focusing on right now.  Well, you've reserved a minute for rebuttal. Why don't we hear from counsel for the appellee, Mr. Gorfinkel? Yes, please. And then, Mr. Irwin, we'll come back to you on rebuttal. Okay. Thank you, Your Honor. May it please the Court. Paul Gorfinkel of the firm Rifkin-Radler on behalf of Appellee Colony Insurance Company. As Your Honors are well aware, there are three grounds on which the district court granted my client judgment in the pleadings. So I would respectfully disagree that if it is a claim, we win. If it's not a claim, that's not true. Even if the court disagrees that the H&K letter is a claim, there are still two other bases upon which this court can and should affirm the district court's decision. And if it's a claim, it's prior knowledge of a wrongful act or it's a series of related acts, right? Yes, sir. Yes, Your Honor. But if we agree with you that it's a claim, you win, that's it? Yes, Your Honor. On any one of those three grounds which the district court found in our favor, that is sufficient for Colony to obtain and affirm – Could you just speak to the Holland and Knight letter and why it's a claim? I'm sorry? Could you speak to the Holland and Knight letter? I will be happy to. Your Honor, the Holland and Knight letter is a claim for at least three particular reasons because it makes three specific written demands for monetary, non-monetary, or injunctive relief. The first one has been discussed already by Mr. Nolan. The H&K letter charges that Pine refused to produce certain documents contrary to his fiduciary duty. Now, I understand that under the LLC law, a member is entitled to request documents. That in and of itself is not – a refusal to produce documents would not be a wrongful act. The context here, though, however, is that Pine has refused on a number of occasions to produce documents and now they are in violation of their obligations under the LLC law. As Your Honors are aware, in the Weaver v. Axis Surplus Insurance Company case, which this Court decided, this Court held that a demand for certain documents is a claim. It is a demand for non-monetary relief, and that in and of itself is sufficient to make the H&K letter a claim. However, there are other ways in which the H&K letter is a claim. On page A144 of the record, the letter says that Pine has no right to receive fees for its services. It then continues to say that Pine has paid itself more than $622,000 in unauthorized fees. The implication of this is obvious. If a letter – if the H&K letter states that Pine has no right to receive services – fees for its services – oh, and by the way, it received $622,000 in unauthorized fees. There is no way to view this reasonably as something other than a demand for monetary relief. A demand for – Well, they don't make that demand, right? So – and they do say they want an amicable resolution, so does that suggest that they haven't actually made the claim and it's only a possible future claim? Well, Your Honor, I'd refer you to the decision by this Court in Seneca Insurance Company v. Kemper. Now, that case, as this Court affirmed on the judgment of the district court below, there was an – there was a – the letter alleged an antitrust violation, similar to violations which were made here. It had a demand for actual damages, the $622,000 in fees, and it suggested a meaning to, quote, seek a resolution, and if not, we will, quote, proceed accordingly. It is unnecessary to have magic words like, I hereby demand $622,000. You must pay me this money. Those exact words are not necessary, because as this Court wrote in Seneca v. Kemper, the implication is that counsel requested the meeting for this reason. In other words, when the H&K letter requested a meeting, the implication is that they didn't want to sit down and just talk friendly. They wanted to talk about resolving the claims that had been raised, and this Court found that to be sufficient to constitute a claim. I also want – I want to address briefly, if I may, the statements that Pine has made that this was really a familial affair, everybody was related, they were all friendly, they have a history of dealing with each other. Well, to a certain extent, that's true, but by the time we got to the H&K letter, it was no longer a familial affair. Both parties had retained counsel, Helen DeKnight and Meister Selig. The letter was written from attorney to attorney. The H&K letter was adversarial. It was 13 pages, single-spaced long, filled with legal arguments. Any familial relationship that may have existed previously, well, that was now by the books. We're now talking about a hostile adversarial relationship. Would that matter, whether it's hostile or it's familial, if they are, in fact, making a claim? It doesn't matter, Your Honor, because a claim is a claim is a claim, but I did want to respond to Mr. Nolan's argument that we're all family, we didn't think it was really a claim. Well, you're right, Your Honor, it doesn't matter what they thought. But even a part – I guess if the general context indicates that people talk this way but everybody understands that they're not seriously going to seek the relief, maybe that might make a difference. But for the reasons you talked about in the letter, it doesn't seem like your argument depends on – Yeah, it might make a difference if Mr. Schneider was writing to Mr. Pine directly, for example. It might have made a difference. But once both sides have retained counsel, it is no longer a familial affair. I also did want to just – I'm curious about this question. So your client has a duty to defend an action if there's any possibility that it's covered under the insurance policy, right? Yes, Your Honor. So at the time that the Schneider action materializes, was it clear that there's just no possibility that it was covered under the policy? Did you know that from the moment of refusal, that there's just no argument? Yes, Your Honor. From the moment of refusal, it was obvious that there was no possibility that there was a duty to defend. For the reasons that are set forth in our brief, in which I'm not sure I need to reiterate at this point, but it was quite clear based upon the H&K letter itself that that was a claim prior to the policy period. There was no question of fact. There was no subtleties of understanding. No, the H&K letter, it demanded documents. It demanded the $622,000. It also demanded an accounting. There was a claim for an accounting. The letter stated that New York law holds that a member of an LLC has a right to an accounting. That also is a demand. And I also, just to- What about the last sentence of the letter? Is that also, we believe a mutually satisfactory resolution of the issue is preferable to costly and unnecessary litigation? You're right, Your Honor. And the clear implication of that sentence is that if there's no mutually satisfactory resolution, we're going to sue you. I think it's generally done that if someone is making a claim, people would rather resolve a claim amicably than to resort to litigation. I think, let's just take hypothetically. I write a letter. You wronged me. You owe me $1,000. Let's have a meeting. I'd like to work this out. But if we don't work it out, I'm going to sue you. Well, that is a claim. It's true that in the H&K letter there were lines, as Your Honor just mentioned, that we want to have a mutually- Even if you guys walk into court and sue somebody, you're still open to a settlement, right? I mean, you're not- Of course. Of course. But the clear implication of the H&K letter, just read a few lines. We want to resolve this without having to commence litigation that would be costly to all parties involved. Such claims should survive a motion to dismiss and a motion for summary judgment. Can I ask about the prior knowledge of a wrongful act? So the definition of wrongful act under the policy is any actual or alleged act, error, omission, or breach of duty by any insured in the rendering of or failure to render real estate development services. Now, since that's disjunctive, it could just be act, right? So it's any actual or alleged act by any insured in the rendering of or failure to render real estate development services. Doesn't that just apply to everything that you ever do, an insured ever does? Any actual or alleged act in rendering real estate services or not rendering real estate services? If a claim is made based upon an act that an insurer did, then it is within the scope of the exclusion. Anything that I do which does not result in- Oh, yeah, yeah. No, I understand that, right? So then a claim arising out of something you do, that would make sense. But then doesn't that definition also serve for the definition about having knowledge, the prior knowledge exclusion? So if you have prior knowledge of something that you did, that would be excluded under the policy? Yes, it would, Your Honor. But wouldn't you have to have prior knowledge of something you did that was alleged to be wrongful or that could conceivably be the basis of a claim? It can't literally mean you have prior knowledge of everything you did prior to that period, right? First of all, just to clarify, we're talking about a different defense now. This does not relate to the- I agree, yes. Okay, so a different defense. Any actual or alleged act, error, or omission, and the Court is well aware that the word alleged is in there. It does not have to be an actual error. It is sufficient if there is an alleged act, error, or omission, which we have here. Now, if there is an allegation of an act which has led to a claim, then yes. If that comes before the policy period and if the insured is aware of that claim of an actual or alleged act before the policy period, then yes, the exclusion will apply. Yeah, but the wrongful-the prior knowledge exception or exclusion doesn't rely on it leading to a claim, right? It's just awareness of the wrongful act. I mean, maybe you're just saying we should understand the definition of wrongful act to not cover literally any alleged act but any act alleged to be wrongful. I believe the preamble-I don't have the entire exclusion before me. I believe the preamble of the exclusion is that there's no coverage for-and I apologize if I'm not quoting verbatim because I'm probably not. If there's any claim based upon an actual or alleged-I'm sorry. If there's any claim based upon a wrongful act of which there is prior knowledge, a wrongful act in turn is an actual or alleged error or omission. So if a claim arises- Prior knowledge of-the claim arises out of any actual or alleged intentional, criminal, dishonest, malicious, or fraudulent act, error, or omission by any insured. So if-yes? But that also has the same problem that I'm describing, which is arising out of any actual or alleged intentional act. I mean, it just seems like that covers everything that the insured does. Your Honor, I would say it does. I would say that if there's a claim which arises out of an alleged wrongful act and the insured knows about it prior to the policy period, that insured cannot- They know that's the act or they know that the prior act might lead to a claim. There's no- They only need to know about the act or they only need to-or they need to know that it could be the subject of a claim. Well, there's no language in the exclusion that requires that the insured know about is going to lead to a claim. The exclusion applies simply if there is an alleged-if the insured has prior knowledge prior to the policy period of an actual or alleged wrongful act that could lead to a claim. So if-well, we don't have to take a hypothetical. In this case, Pye knew prior to the policy period that there were allegations of its wrongful acts in connection with its work for the Schneider Group. It didn't have to be that they were accurate or that they would be upheld in court. That's unnecessary. It was an alleged act of which they had knowledge prior to the policy period. Now, as I said- In this case, they have knowledge that the act was alleged to be wrongful, and maybe that means that the problem that I'm identifying doesn't come up in this case. But, like, if you had a case where the insured had no reason to think that something was wrongful or would lead to a claim and the claim materializes during the coverage period, would the insurer be able to say, well, that's an act you did that was intentional and you knew that you did it, and so therefore it's excluded under the prior knowledge exception? That, I believe, would not be excluded because the insured in such a situation would not have had subjective or objective knowledge. Knowledge that it somehow could lead to a claim. Correct. That is not the case here, Your Honor, as you're well aware. Okay. We've kept you up past your time. Why don't we hear from Mr. Nolan for one last minute. Anything you have that's very quick. Thank you very much. So, just on this particular point on the exclusion, again, it has to be drawn narrowly and there can't be any other reasonable interpretation. Mr. Gorfinkel says that all that matters is that Pine knew that acts had been alleged. That's not actually the language of the exclusion. The language of the exclusion is that the insured had a reasonable belief that it had committed an actual or alleged wrongful act. And the Fifth Circuit, both the lower court and the Fifth Circuit, said that that is not a reasonable policy provision. It renders coverage illusory. And it's clear here that there actually has to be a belief that Pine knew it had committed. And that comes from the policy construction. So, does that mean that Pine had to believe that it did something wrong? Like it had to agree with the people making the allegation? That's the way the exclusion is written. That is literally what it says. And under policy construction rules, that language has to be applied strictly. So, if you have an insured who's just like a psychopath and doesn't believe anything he does is wrong, then he would be able to defeat this exclusion in every case, right? You're saying it depends on their subjective agreement with the allegations as opposed to knowledge that there's somebody out there who believes that they did something wrong. Well, we're talking about, again, in the context of real estate development services. So, what we're talking about is, did I know for a fact that I had not produced documents upon request? Pine didn't have that knowledge here. The first request for the documents was in the H&K letter. So, again, there has to be this knowledge that you've actually committed. And that comes from the policy itself. There's a section in the policy dealing with the definition of a subsidiary. And there, Colony specifically distinguished between what is an actual act and what is an alleged act in the context of a wrongful act. So, Colony knew that there is this distinction in certain contexts within the policy that is it you actually committed an act or that you knew that it had been alleged. And Colony didn't use that here. I mean, in the applicable provision, it says actual or alleged. You want to read alleged out of the policy because you think it's an unreasonable provision. They want to read alleged into it. And, again, the policy elsewhere makes that distinction. Sorry. They want to read alleged into which provision? Into the exclusion about this alleged wrongful act.  The prior knowledge exclusion. Correct. The provision doesn't apply to any claim arising out of a wrongful act, whatever, all of those things arising out of any actual or alleged intentional, criminal, dishonest, malicious, or fraudulent act, error, or omission by any insured. So doesn't that include the word alleged? You're saying, you know, subsection A, which says arising out of a wrongful act, means that it's not alleged. But then in the alternative, it's B, right? Arising out of actual or alleged intentional, criminal, dishonest, malicious, or fraudulent act, error, or omission by any insured. So they're relying on B. And if you actually insert the definition of wrongful act there that they would like to ascribe to it, it reads that there's a claim arising out of an actual or alleged error if you have a reasonable belief that you had committed an actual or alleged error. So even if you look at it that it's an alleged error, you still have to believe that you had committed it. And if you take a look at the rest of that exclusion, it refers to the violation of a disciplinary rule, for example. And there's nothing with respect to an allegation there. And under rules of construction, you have to read that together. There's the past participle had. That's connecting had, committed, and wrongful act, actual or alleged. Alleged language means that either you did it or somebody alleged that you did it, but you think that the provision only applies if you believe that you actually did it. That's correct, because that is. It wouldn't cover unfounded allegations. And that's because. You're saying that even if your client knew that there was an allegation that might lead to a claim, if you're confident that you didn't, that the allegations are not correct, it wouldn't trigger the exclusion. What I'm saying is if I knew that I had committed a wrongful act, the exclusion applies. If you're talking about whether I knew that somebody had alleged that wrongful act, again, that's not the language of this exclusion. That language appears in every case that they've cited in their briefing. That's not the same exclusion here. And, again, if you look at the exclusion in those particular cases, that actually matches exclusion A1, which is not at issue here and doesn't apply here at all. If they actually wanted to cover or to exclude precisely what Your Honor is talking about, they could have used the exclusion that is in every single case that they cite or in other policies that they've actually written. They didn't do that here. That was an intentional choice? That was an intentional choice. Why? Why would that make sense as a choice? Because under the rules of insurance policy construction, the words of the policy reflect the intent. No, I understand. You're saying we should be controlled by the words of the policy. But I'm just asking, so if, in fact, the differences in language has the implication you're suggesting, why would anyone agree to a contract that depends so strongly on the subjective beliefs of the insured? Well, first of all, it's both a subjective and objective belief, but you also then have to apply it to the actual policy language. And here the policy language is, did you subjectively or objectively believe that you had committed a wrongful act? Okay, I understand. All right. Thank you very much to counsel for both sides. We will take the case under advisement.